No. 46,052

FRANK FREY and PAUL J. COOK, *Appellants,* v. MASTER FEEDERS II, INC., *Appellees.*

(486 P. 2d 1377)

Opinion filed July 16, 1971.

*Van Smith,* of Corley, Braun & Smith, of Garden City, argued the cause and was on the brief for appellants.

*Dale E. Saffels,* of Fleming, Haag, Saffels & Hope, of Garden City, argued the cause, and *A. M. Fleming, Lloyd H. Haag, Clifford R. Hope, Jr.,* and *John D. Osborn,* of Garden City, were with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, J.: This is an appeal from the judgment of the district court sustaining the validity of a survey made by the county surveyor of Haskell County, to establish the north-south half section line between the west half and the east half of Section 26, Township 27 South, Range 34 West, of the 6th Principal Meridian. The appellant Frank Frey owned the northeast quarter, and the appellant Paul J. Cook owned the southeast quarter of Section 26. As hereafter indicated, the appellee, Master Feeders II, Inc., had contracted to purchase the west half of Section 26, and it received a warranty deed to the real estate on July 31, 1969.

There is no real dispute of the pertinent facts which follow: During March or April, 1969, Sam Moler, the Haskell County surveyor, was requested by a Mr. Oneal, the then owner of the northwest quarter of Section 26, to establish the north-south half section line in that section. Moler commenced preparation of the paper work and was prepared to send out notices of the survey when Oneal advised him he had a land transfer coming up and to hold up on the survey.

Thereafter, and on a date not disclosed by the record, Master

Feeders entered into a contract to purchase the west half of Section 26. During June, 1969, Moler was contacted by J. R. Ham, who represented Master Feeders which then occupied the west half section, for a survey of the north-south half section line of Section 26. The record does not disclose the date of the request for the survey, but it was originated as a private survey for the reason Master Feeders did not feel the adjoining owners should pay the expense of the survey.

Moler commenced the survey in June, 1969, and, with the help of two assistants, proceeded to establish the respective corners and boundaries of Section 26, and to locate the north-south half section line pursuant to recognized survey procedures and engineering practices. Moler testified the survey began with a search for any existing corners; that there were no government stones or markers in the area; that the original government corners being charcoal stakes, pits and mounds, did not last very long, but that through records in his office it was evident to him the iron pins that were established in 1925 and during the early 1930's were established from a considerable number of government corners, and that the survey was based upon three of such established corners in the vicinity.

When the survey disclosed the half section line was so "far off" that there would be a shift to the east of the line fence which went down the north-south center line of Section 26—as much as 50 feet on the southwest corner of Cook's land and approximately 81 feet on the southwest corner of Frey's land—a meeting was held in Moler's office at which time Ham, Frey and a Mr. Guyer were present. Moler showed what had been done, and explained the result of the survey. Master Feeders was concerned about the location of the half section line, and an attempt to negotiate a property change was made between Master Feeders and Frey. Frey did not acquiesce in changing the half section line, and advised Moler that if there was a legal way to establish a line, that should be done. A legal survey was intended by those present to mean a survey conducted according to law.

Moler commenced proceedings to conduct a legal survey, and on July 3, 1969, caused notice of the survey to be published pursuant to K. S. A. 19-1423, and on July 24, actual service thereof was made upon the adjoining landowners, J. R. Ham, representing Master Feeders, and Frank Frey, Satanta, Kansas, and Paul J. Cook, Craig,

Colorado. At that time, Moler knew Master Feeders had contracted in writing to purchase the west half of Section 26.

The notice of survey recited that pursuant to a request by Ham for a survey of the boundary line between the west half of Section 26 and the east half of that section, "and to establish the corners and boundaries between said tracts," the county surveyor would on July 28, 1969, proceed to make the survey and establish the corners and boundaries between the tracts as provided by law, and that the costs would be apportioned between Master Feeders and the occupants affected thereby. The notice further recited the survey would begin at 10:00 o'clock a. m. on July 28, 1969, at the northwest corner of Section 26, and proceed as provided by law. It further stated that "final viewing" would begin at 2:00 o'clock p. m. on that date at the northwest corner of Section 26, and proceed as provided by law.

At 10:00 o'clock a. m. on July 28, 1969, pursuant to the notice of survey, Moler went to the northwest corner of Section 26, and he was the only one who appeared. The survey had already been completed and he did no chaining. However, he went around the section and remarked the corners that had previously been established by relocating the iron bars that had been driven at the corners. The report of the private survey made in June was on file in his office and the report of that survey "set" this survey. In other words, after the notice of survey was effective, Moler interpreted the private survey as a legal survey on July 28. Frey had notice and knew of the survey in June and Moler talked to him concerning it, and he was aware of what was going on.

At 2:00 o'clock p. m. on July 28, Moler went to the northwest corner of Section 26 for the "final viewing" of the survey. At that time, J. R. Ham, Frank Frey, Paul J. Cook appearing by Lelyn Braun, his attorney from Garden City, two county commissioners, and one or two other interested parties, were present. The record discloses the following:

"Q. Now by being there at the final survey or final viewing what do you mean by that?

"A. Well the methods and procedures of the survey are then explained and any questions anybody has at that time it is for them to find out how it was done as to if they have any need to appeal or if they don't like it, it is up to them to say so at that time."

Moler explained the procedures of establishing respective corners and boundaries of Section 26, and the appellants offered no wit-

nesses or testimony at the final viewing to challenge the procedures followed, or the correctness of the survey.

On the following day, July 29, Moler filed the report of the survey of Section 26 in his office as being the official survey to determine the boundary line between the east half and the west half of Section 26. Thereafter, the appellants, Frey and Cook, timely perfected appeals from the report of the survey to the district court of Haskell County pursuant to K. S. A. 19-1426.

While the appellants' statement of points make several assignments of error, it may be said their complaint concerns four principal points. First, the survey in this case was actually a private survey made in June, 1969, while K. S. A. 19-1425 makes no provision for a survey prior to the date fixed in the notice of survey—in other words, that no survey actually occurred at the time and place stated in the notice of survey. Second, the county surveyor was not a licensed surveyor when the actual survey transpired. Third, that notice of the survey was not sent to all interested landowners as provided in K. S. A. 19-1423, who could be affected thereby. Fourth, the district court should have rejected the county surveyor's report, and it did not amend or modify the same by correcting an admitted error of the county surveyor in compiling the report.

It should here be noted the appellants make no claim the findings of the surveyor were incorrect concerning the location of corners or boundary lines set by the survey, which were computed in accordance with the plats and field notes of the original government surveys of 1884 and 1887 on file in the surveyor's office. Likewise, they make no objection as to the correctness of the "Report of Survey," except with respect to the sentence which reads, "[w]ith this information I established the NW corner and the SW corner of Section (26)." Moler testified the phrase "and the SW corner" was a typographical error, and should read, "and the NE corner." The district court did not correct this minor discrepancy, and it is conceded by the parties that to make the report speak the truth, it should be corrected in this respect.

The appellants' first contention no survey actually occurred at the time and place stated in the notice of survey, and that they were denied the opportunity to examine the procedures followed and to know what actually transpired with respect to the change of boundaries, is not well taken. At the trial, the district court heard Moler's testimony concerning the methods and procedures he fol-

lowed in making the survey which began at an established corner of Section 25 that had been documented in his office. The survey was based upon that corner, and two other established corners in the vicinity, which were also documented in his office. The report of the survey was admitted in evidence, which stated the survey began on July 28, 1969, at the northwest corner of Section 26, at 10:00 a. m. Moler was the only one who appeared and he remarked the corners of Section 26 which had previously been established by iron bars he had driven into the ground. While the surveyor did not perform actual chaining and measuring operations at the time specified in the notice of survey, that procedure was fully explained to all the interested parties at the final viewing on July 28, and, under all the facts and circumstances, we think the surveying procedures and remarking of the corners at the time mentioned in the notice of survey, was a sufficient and substantial compliance with K. S. A. 19-1425. Moreover, having received proper notification, which is conceded, there was nothing to prevent the appellants from accompanying Moler during his surveying procedures on the morning of July 28. In addition, the appellants are in no position to complain of lack of opportunity to discuss surveying methods for the evidence clearly disclosed they were not only present in person and by counsel at the final viewing, but they produced no witnesses and offered no evidence, or performed any other act at that time, to change or alter either the procedure, or the corners and boundaries established by the survey. On that point, the district court stated:

"The county surveyor's return shows that on July 28th at 2:00 P. M. Cook and Frey were represented by Lelyn Braun, a practicing attorney of Garden City, therefore the Court approves the survey for the reason that there is no showing that the county engineer rejected any testimony offered to him and that the attorney knew that he had an opportunity to make such offer. If such offers were made, the record is silent as to the same and since the statute uses the word may instead of shall the court feels that said survey should be approved. The court feels that counsel should not be permitted to invoke pure technicalities when he was present and could have presented the same or at least made a showing that he tried."

The appellants' second contention that Moler was not a licensed surveyor when the actual survey transpired, is not well taken. The record affirmatively shows Moler was a practical and competent surveyor, having performed that work since 1957, and that he followed recognized surveying procedures and engineering practices in making the survey. The Legislature has provided that one is

qualified to hold the office of county surveyor who is a practical and competent surveyor. K. S. A. 19-1403. There is no statutory requirement that a license be held, since the position of county surveyor is not limited strictly to technical, educational qualifications. The record clearly shows Moler possessed the required practical experience and ability to be a competent surveyor.

It is next claimed the survey was made without proper notification to all affected parties. The record discloses otherwise. Notice was given by the county surveyor and duly published as required by K. S. A. 19-1423, and service thereof was made upon all affected parties in accordance with the statute. On this point it is further claimed that because Master Feeders did not receive a deed to the west half of Section 26 until July 31, it was not the record owner on July 3, when notice of the survey was first published, or when service was made on persons who may be affected by the survey, or on July 28, when the final viewing occurred and the survey approved. It is true the record shows that a Mr. and Mrs. Alexander were the record owners of the west half of the section on July 28, but, as previously indicated, Master Feeders had contracted to purchase the real estate and was in possession of the property. If there was substance in the contention, the only person who could raise the question of improper notice would be a party who was not properly notified. (*Close v. Huntington,* 66 Kan. 354, 71 Pac. 812.)

Lastly, it is contended the district court should have rejected the report of survey, and that it did not amend or modify the admitted typographical error of the county surveyor. As indicated, Frey knew of the survey in June, since Moler talked to him concerning it, and he was present at the meeting in the county surveyor's office when the survey was discussed. At that meeting, and knowing the survey would require a shift of the line fence to the east, Frey advised Moler that if there was a legal way to establish the half section line, that should be done. In effect, Frey's statement constituted a request that the results of the survey made known to him and Master Feeders should be confirmed by official notice and final viewing. We think the appellants may not complain of the district court's approval of the survey when they make no complaint that the findings of the surveyor were incorrect. It is clear the typographical error in the surveyor's report describing his location of the northwest corner and the northeast corner of Section 26 in

no way operated to the prejudice of the appellants. However, this court directs the district court to correct that error upon entering judgment in this case.

As modified, the judgment of the district court is affirmed.